UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LISA FOUCE,                                    )
           Plaintiff,                    )
                                               )
vs.                                            )          1:04-cv-416-LJM-WTL
                                               )
LOWE'S HOME IMPROVEMENT CENTER,  )
INC.,                                          )
           Defendant.                    )

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's, Lowe's Home Centers, Inc.[1] ("Lowe's"),

Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and

Local Rule 56.1.  Plaintiff Lisa Fouce ("Fouce") brought this action against her former employer

pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.,

alleging race discrimination and a hostile work environment.  Fouce claims that she was asked to

"fill in" for cashiers because of her race; was subjected to a racially hostile work environment; and

was subject to disparate discipline and termination.  The issues are fully briefed and ripe for ruling.[2]

For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Defendant's

Motion for Summary Judgment.

---

[1]      Defendant was improperly named as Lowe's Home Improvement Center, Inc.

[2]      On December 5, 2005, the Court granted Lowe's' leave to file a surresponse brief.  To date, Lowe's has not so filed.  Under Local Rule 56.1, parties are allowed seven days to file a surreply.  The Court issues this Order without Lowe's' additional briefing.

# I.  BACKGROUND

## A.  FOUCE'S EMPLOYMENT

Fouce is an African-American female, and was employed by Lowe's from May 1996 until her termination in November 2003.  Lowe's is a national retail company specializing in home improvement products.  Fouce worked as a Customer Service Associate in the outside lawn and garden department until her August 1996 transfer to the customer service department, where she was responsible for helping customers, housekeeping, answering phones, and working as a cashier. Fouce Dep. at 64-66.  In September 2000, she became the pricing and signage coordinator, and in such capacity she was responsible for changing prices on items as necessary throughout the store and filling in for cashiers when needed.  *Id*. at 66, 69, 131, 134.  As the pricing and signage coordinator, Fouce's immediate supervisors for the relevant time frame were Assistant Manager Cathy Smith ("Assistant Manager Smith"), Assistant Manager Eric Ringer ("Assistant Manager Ringer"), and Store Manager John Gill ("Store Manager Gill").  *Id*. at 71.

Fouce filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC Charge") on November 13, 2003, and filed her Complaint in this Court on March 3, 2004.  Fouce Aff. ¶ 23-24.

## B.  LOWE'S' POLICIES

Lowe's has a "Performance Management Policy" that details the company's disciplinary process.  Gill Dec. ¶ 6; Exh. C ("Policy 315").  Policy 315 classifies misconduct into three levels: Class "A," which includes the most serious misconduct and repeated performance problems for which immediate discharge may occur; Class "B," which includes serious acts that indicate a

disregard of established rules and/or standards of conduct that normally result in a written warning for the first offense, final warning for a second offense, and termination for any subsequent offense; and Class "C", which generally results in an initial warning. *Id.* Employees receive an Employee Performance Report ("written warning") for violations of Lowe's Policies. Policy 315, Section VI, A, sets forth a nonexclusive list of actions that will normally subject an employee to immediate termination on the first occurrence – a Class "A" Violation. Among those actions listed are "[v]erbal or physical abuse or other abusive behavior toward employees, customers, or other persons on [Lowe's] property," "insubordination," and "refusal to cooperate fully in investigation of . . . [a] policy violation." *Id.*

## C.  ALLEGATIONS OF HARASSMENT

On three occasions, Fouce saw racially offensive statements written in the women's bathroom, which was accessible to customers as well as employees. Fouce Aff. ¶ 22. The comments were statements such as "nigger go home," "nigger go back where you came from," and "stupid nigger." Fouce Dep. at 239. The graffiti was immediately painted over when Fouce complained, and an Assistant Manager assured Fouce that if Lowe's found out who was responsible, the issue would be promptly addressed. *Id.* ¶¶ 239-40, 242-43, 245.

Fouce overheard a co-worker used the word "nigger" on one occasion. *Id.* at 218. Also, a co-worker called her "Aunt Jemima" on three occasions and once also said, "I thought you people like red beans and rice and catfish." *Id.* at 211-13. After each incident, Fouce reported the comments to management, after which the remarks were not repeated. *Id.* at 212, 214, 217-19,

## D.  FOUCE'S DISCIPLINARY HISTORY

Fouce was ultimately discharged after three separate incidents involving inappropriate attitude and aggressive behavior.  Fouce Aff. ¶ 6; Exh. 4.  On March 14, 2003, Fouce was given a written warning for verbal hostility and aggressiveness toward fellow employees and managers and making derogatory comments about Lowe's within earshot of customers.  *Id.* ¶ 9; Exh. 2; Fouce Dep. at 121, 128-29.  Fouce expressed her displeasure toward the cashiers who asked her to fill in for them.  Fouce Dep. at 130-31.  She also complained about the fact that Lowe's had exchanged Fouce's printer for another printer, and spoke disrespectfully to a supervisor.  *Id.* at 121, 125-26, 128-29, 134-35; Exh. 7.

On August 12, 2003, she was given another written warning for allegedly yelling about how upset she was with the company in front of customers and employees.  *Id.* ¶ 10; Exh. 3.  She received this warning after creating a disturbance while waiting at the store on her day off to get her paycheck, which was not immediately available upon her arrival.  Fouce Dep.; Exh. 8.  She complained to another employee that Lowe's did not care about its employees and stated how upset she was with the company.  *Id.* at 154-55; Exh. 8.  A customer service representative who spoke with Fouce reported to management that Fouce was very rude to her.  Fouce Dep.; Exh. 7.  Fouce understood that if she received a third written warning, she would be terminated.  *Id.* at 185.

On November 4, 2003, Fouce was given a third and final written warning and was terminated for alleged aggressive behavior and inappropriate attitude.  Fouce Aff. ¶ 11; Exh. 4.  Assistant Manager Rita Green ("Assistant Manager Green") called Fouce, over the store phone, and asked her to come to the office to discuss an allegation by another employee that Fouce had threatened that employee's life.  Fouce Dep. at 189.  Fouce told Assistant Manager Green during that phone

4

conversation that this was "stupid" and that she did not need to go to the office because she had not said anything to the employee.  Fouce then hung up the phone and refused Assistant Manager Green's request.  *Id*. at 189, 194.  Store Manager Gill paged Fouce and told her to go to the front office and talk to Assistant Manager Green.  Fouce complained, but finally went.  *Id*. at 190.  As a result of this incident, Fouce was terminated for insubordination and creating a hostile work environment.  *Id*. at 192; Exh. 10.

## II. SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 111 S.Ct. 1317 (1991).  Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

5

The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

On certain occasions, the Seventh Circuit has suggested that a court approach a motion for summary judgment in an employment discrimination case with a particular degree of caution. *See e.g ., Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). The language implied that summary judgment might be less appropriate in this context based upon the presence of issues of motive and intent. *Holland*, 883 F.2d at 1312. As the Seventh Circuit has emphasized, however, these cases do not establish a heightened summary judgment standard for employment-related cases. Instead, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997). Even when discriminatory intent is at issue, summary judgment is appropriate when the nonmovant presents no evidence to indicate motive or intent in support of her position. *See Holland*, 883 F.2d at 1312. Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support. *See Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994).

## III. DISCUSSION

### A. RACE DISCRIMINATION

Fouce may establish her Title VII claim two separate ways – the direct method or the indirect burden-shifting method under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005). Because Fouce has not presented any direct evidence of race or age discrimination, the Court turns to the indirect method of proof. To establish

a *prima facie* case, a plaintiff must show that (1) she is a member of a protected class, (2) she reasonably performed to her employer's legitimate expectations, (3) she was subject to an adverse employment action, and (4) she was treated differently from similarly-situated employees outside of her protected class. *See McDonnell Douglas*, 411 U.S. at 802.

If Fouce makes this showing, the burden of production shifts to Lowe's to articulate a legitimate, nondiscriminatory reason for its actions. *Id*. If Lowe's meets this burden, Fouce must show that the proffered explanation is pretextual. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Lowe's argues that Fouce's claim regarding discipline and eventual termination fails because she cannot show that 1) she suffered an adverse employment action; 2) she was meeting Lowe's legitimate performance expectations; 3) any similarly-situated employees not in her protected class were treated more favorably; and 4) its legitimate, non-discriminatory reason for its action was pretextual. *See* Def.'s Br. Supp. at 15.

To bring a suit under Title VII, a plaintiff in a deferral state such as Indiana must have filed an EEOC complaining of the alleged act of discrimination within 300 days of the occurrence of the alleged discriminatory act or event. *See* 42 U.S.C. § 2000e-5(e); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). This statutory limitations period serves to "protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980). Fouce's Title VII allegations with respect to incidents of discipline before January 13, 2003, are untimely and will not be considered by the Court.[3]

---

[3]      In certain instances, an employment discrimination plaintiff may include time-barred allegations via the "continuing violation" theory articulated by the Supreme Court in *National*

### 1. <u>Adverse Employment Action</u>

Fouce claims that she was discriminated against because she was asked to fill in as a cashier on certain occasions.  However, only those acts resulting in material adverse employment actions are cognizable under Title VII.  *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996; *Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 611 (7th Cir. 2001).  A plaintiff shows she suffered an adverse employment action by pointing to either evidence in the record that indicates her employer engaged in an action which is specifically prohibited under Title VII, or engaged in an action that materially affected the terms, conditions, and privileges of her employment.  *See, e.g., Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 574 (7th Cir. 2001); *Stutler v. Ill Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) (identifying a cognizable adverse employment action as a material change in employment such as termination of employment, a demotion, a failure to promote, a significant job reassignment, or a significant change in benefits).

Whether an employer's action affects an individual's terms, conditions, and privileges of employment depends on the facts of each case, but the employee must be able to show that "material harm has resulted" from the action.  *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir.

---

*Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 2002, under one of the following theories: (1) the employer made employment decisions over a period of time making it difficult for the employee to determine the actual date of discrimination; (2) the employer relied on an express policy of discrimination; or (3) the separate acts of discrimination were part of an ongoing pattern and at least one of the acts occurred within the relevant limitations period.  *See Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707-08 (7th Cir. 2002); *National R.R. Passenger*, 536 U.S. at 120.

However, Fouce fails to present such an argument, and "[t]his court has no duty to research and construct legal arguments available to a party, especially when [s]he is represented by counsel." *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) (internal quotation omitted); *accord, e.g., LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921-22 (7th Cir. 1997) (collecting cases).  The Court "is not equipped to act as auxiliary lawyer for a party." *Tyler*, 70 F.3d at 466.

9

2001); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (an action is not materially adverse simply because it makes an employee unhappy or involves a minor or trivial action).

Though Fouce may have preferred not filling in as a cashier, her subjective preferences are irrelevant. *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 118 n. 2 (7th Cir. 2001) (noting that a plaintiff did not suffer an adverse employment action because, although he may have been "annoyed" by his work assignments, he did not suffer any decrease in pay or inability to complete his work.); *Smart*, 89 F.3d at 441 ("not everything that makes an employee unhappy is an actionable adverse action."). The allegation that she was paged to fill in does not support her Title VII claim, especially in light of her admission that doing so was part of her job description, and she therefore suffered no material harm. Fouce Dep. at 131.

Fouce also asserts that her disciplinary history and ultimate termination supports her racial discrimination claim. Lowe's argues that the March 13, 2003, and August 12, 2003, written warnings do not constitute "adverse employment actions" within the meaning of the law. *See* Def.'s Br. Supp. at 16-17. The Court disagrees. The record clearly reflects that these two written warnings were part of the aggregate basis for her termination on November 4, 2003. *See* Pl.'s Exh. 4.[4] Therefore, the March 13 and August 12, 2003, written warnings cannot be accurately described as mere admonishment or reprimand without tangible job consequence. Accordingly, Fouce's post-January 13, 2003, written warnings constitute adverse employment actions for the purpose of supporting her Title VII claim.

---

[4]     "This is the third time [Fouce] has been talked to about her attitude and aggressive behavior." *Id*. Also, under the final written warning's section entitled "List previous performance reports within the last 12 months," both the March 13 and August 12, 2003, incidents were listed, with the August 12 incident marked as her "final notice." *Id*.

10

## 2. <u>Legitimate Performance Expectations / Similarly-Situated Employees</u>

Where the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it "makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations." *Curry v. Menard, Inc.*, 270 F.3d 473, 477-478 (7th Cir. 2001) (quoting *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999)). Fouce was disciplined repeatedly for violating company policies, resulting in written warnings and eventual termination. Fouce's repeated violation of company policies, therefore, makes clear that she was not meeting her employer's legitimate expectations as normally required to establish a *prima facie* case of discrimination. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004) (setting forth elements of a *prima facie* case of discriminatory discipline). Fouce disputes the extent to which she violated Lowe's policy,[5] but even if each of Lowe's allegations is true, such a finding would not doom her attempt to establish a *prima facie* case because when a plaintiff alleges discriminatory discipline, the second and fourth prongs of the McDonnell Douglas inquiry merge. *Id*. Therefore, Fouce need show only that similarly-situated employees outside her protected class committed similar violations of Lowe's' Policy but were disciplined less harshly. *Id*. at 728.

---

[5]     Fouce now disputes the particulars of the three incidents for which she received written warnings. She now testifies that she did not use of foul language, was not verbally hostile or aggressive, did not speak at an unreasonable volume, and was not within earshot of any customers. *See* Fouce Aff. ¶¶ 7, 9, 10, 11

This testimony conflicts with Lowe's evidence, proffered in the form of witness testimony and the actual content of her written warnings. With evidence on both sides of the aisle, there exist issues of material fact as to how the incidents actually occurred. But again, for the purposes of the instant motion, Fouce's presentation of contradictory evidence is irrelevant. She need not prove that she was meeting Lowe's legitimate expectations.

Fouce claims that she was disciplined more harshly than Caucasian employees Reidy and Whitner, who also violated the Policy by engaging in similar hostile / aggressive conduct, which, if true, would constitute "Class A" violations under Policy 315.[6]  *See* Pl.'s Br. Resp. at 12.

Fouce presents evidence that Reidy routinely yelled and "cussed" at co-employees, supervisors, and managers.[7]  Fouce Dep. ¶ 12.  On one occasion, Reidy allegedly spilled bags of concrete in a truck and got into a loud "cussing argument" with the delivery manager over who should clean up the mess.  Reidy yelled loudly at Assistant Manager Smith.  Whitener Aff. ¶ 9.  The incident was witnessed by several employees and several customers were present.  *Id.*  Reidy did not receive a written warning.  Pl.'s Req. for Prod. of Doc. nos. 4 and 5; Gill Dep., Exh. 5; Gill Dep. at 49.

Fouce also alleges that in June 2003, Reidy told Assistant Manager Smith and another employee that they could "kiss his ass" while several employees were present.  Fouce Dep. ¶ 13.  Store Manager Gill allegedly told Reidy that he would let the incident pass but to watch his mouth in the future.  *Id.*  Reidy did not receive a written warning for the incident.  Pl.'s Req. for Prod. of Doc. nos. 4 and 5; Gill Dep., Exh. 5; Gill Dep. at 49.

Finally, Fouce alleges that in December 2003, Reidy was in the break room when he got into an argument with his wife over the phone.  Whitener Aff. ¶ 8.  He yelled and cussed in front of

---

[6]      Fouce does not cite to any record evidence in this section of her brief, forcing the Court to parse the record to support her statements.  While it is the Court's responsibility to determine if genuine issues of material fact exist, "[t]he parties . . . bear a cocomitant burden to identify the evidence that will facilitate this assessment."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  *See also United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") (*per curiam*).

[7]      Fouce also alleges that Reidy damaged Lowe's property while engaging in horseplay, but the Court does not find this relevant to Fouce's claim, as it does not implicate Lowe's' Policy regarding insubordination, or aggressive or harassing behavior towards other employees.

12

several employees, ripped the phone out of the wall and threw it across the room.  *Id.*  Reidy was not

issued a written warning for this incident either.  Pl.'s Req. for Prod. of Doc. nos. 4 and 5; Gill Dep.,

Exh. 5; Gill Dep. at 49.

Lowe's argues that Fouce's affidavit contradicts her deposition testimony with regard to a

vast majority of the incidents alleged because Fouce testified that the *only* hostile behavior she was

aware of with regard to Reidy was that he told Assistant Manager Smith that she could "kiss his ass."

Fouce Dep. at 279-80.  She testified:

> Q:   And aside from Tim Reidy saying to Cathy Smith that she could "kiss his
>
>       ass," did he make any other comments which you found to be hostile?
>
> A:   No.

*Id.*  Lowe's takes this statement to mean that the only hostile comment Reidy *ever* made was that

Assistant Manager Smith could "kiss his ass."  Upon review of the deposition however, Fouce

appeared to be limiting her response to the specific incident that was the subject of questioning, and

was not testifying that Reidy never made any other comments she found to be hostile.  Lowe's

appears to take Fouce's response out of context.

Lowe's also argues that Store Manager Gill – the supposed only decision-maker at Lowe's

– was never made aware of any complaints about Reidy until July 19, 2004, Gill Dec. ¶ 12, and

therefore, Fouce cannot argue that he was disciplined disparately.  But Fouce testifies in her affidavit

that she overheard Store Manager Gill talking with Reidy about the incident where Reidy had told

Clark and Assistant Manager Smith that each of them could "kiss his ass."  Fouce Aff. ¶ 13.  This

evidence conflicts squarely with Store Manager Gill's declaration that he was unaware of the

incident, thus creating an issue of material fact.  Furthermore, Lowe's' argument requires that the

13

Court impermissibly draw an inference in Lowe's favor that Store Manager Gill was the only supervisor responsible for employee discipline.  *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996),  There is simply nothing in the record from which the Court can glean that Store Manager Gill was the only decision-maker and the only individual capable of disciplining employees.  In fact, there exists only evidence to the contrary: Each written warning received by Fouce included the signatures of both an Assistant Manager and the Store Manager, and on each written warning, an Assistant Manager was listed as Fouce's "supervisor."  Accordingly, the Court cannot conclude, for the purposes of the instant motion, that no decision-making authority was aware of Reidy's behavior which, if true, would be characterized as a "Class A" infraction under Policy 315.

Fouce also presents evidence that Whitener engaged in the same type of conduct as she. Specifically, Whitener threw a phone at Patty Decker ("Decker"), the receiving and delivery manager, hitting her with it, and Whitener was not disciplined.  Whitener Aff. ¶ 6.  There were also a number of times when Whitener became angry and threw things in the presence of managers, fellow employees, and customers.  *Id*. ¶ 7.  He was never disciplined for such behavior.  *Id*.

Lowe's argues that Fouce's affidavit is contrary to her deposition testimony and is therefore inadmissible.  Specifically,  Lowe's argues that Fouce affirmed that her testimony was complete during her deposition,[8] yet later testified in her affidavit that Whitener "routinely cussed, yelled, and

---

[8]    Fouce affirmed that her testimony was complete:

Q: And in reading the allegations listed in your complaint, have we covered all the facts that support your allegations?

A: Yeah.

* * *

14

threw things at and in the presence of employees and customers," which was beyond the scope of her deposition testimony.  Fouce Aff. ¶ 15.

First, Fouce's affidavit is not the sole, or even primary, source of her evidence of Whitener's behavior.  Instead, Whitener himself testified that he engaged in behavior that, if true, would also be characterized as "Class A" infractions under Policy 315.  *See* Whitener Aff. ¶¶ 6-7.  Second, Lowe's failed to attach the pertinent parts of Fouce's deposition to its brief, and the Court is unable to ascertain what Fouce actually testified to before affirming that she had covered all the facts supporting her allegations.  Fouce conveniently attached pages 278-80 of her deposition to her surreply brief, but again, without knowing specifically what Fouce testified to in her deposition, the Court cannot conclude that her later-filed affidavit is contradictory, and the Court has not been provided a complete copy of Fouce's deposition.

Lowe's also argues that evidence of Whitener's behavior is irrelevant because Fouce does not provide evidence demonstrating that the relevant decision-maker – Store Manager Gill – was aware of Whitener's behavior.  Again, the Court disagrees.  Fouce Aff. ¶ 13.  There is nothing in the record from which the Court can glean that Store Manager Gill was the only decision-maker and the only individual capable of disciplining employees, especially considering that the written warnings submitted by the parties included the signatures of both an Assistant Manager and the Store Manager.  Drawing all inferences in favor of Fouce for the purposes of the instant motion, *see*

---

Q: Have we covered all the white employees who you are alleging to be routinely aggressive, rude, and disrespectful but not terminated?

A: To the best of my knowledge.

Fouce Dep. at 278.

*Fromm*, 94 F.3d at 257, it is entirely possible that Assistant Managers such as Smith witnessed behavior by other employees punishable as a "Class A" infraction under Policy 315, but did not take action, whereas Fouce was subject to discipline for similar incidents.  As the moving party, the burden was on Lowe's to provide the Court with evidence to support it's argument that Store Manager Gill was the only supervisor responsible for employee discipline, but it failed to do so.

As the Supreme Court noted in *McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 283 n.11 (1976), "precise equivalence in culpability between employees is not the ultimate question" with regard to the similarly-situated analysis.  Rather, the appropriate inquiry focuses on whether the employees engaged in acts of "comparable seriousness." *Id.*  The Court finds the alleged behavior of Reidy and Whitener – acts of abusive behavior towards other employees which constitute "Class A" infractions under Policy 315 – to be of comparable seriousness.[9]  Accordingly, Fouce need not prove she was meeting Lowe's' reasonable expectations because she instead provides evidence that she was treated less favorably than the two Caucasian employees.  *See, e.g., Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329-30 (7th Cir. 2002).

Because Fouce raised an inference that Lowe's applied its legitimate employment expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merged, *see id.*, so the next question for the Court is whether Fouce is similarly situated to any employees not of her protected class.  The Court answers in the affirmative.

---

[9]     Lowe's also argues that Reidy and Whitener are actually examples of Caucasian employees who were treated identically to Fouce.  *See* Def.'s Br. Rep. at 10.  Lowe's proffers evidences that when Store Manager Gill became aware that both were involved in an altercation in 2004, they were immediately terminated.  Whitener Aff. ¶ 14; Gill Dec. ¶ 12.  However, this fact cannot save Lowe's.  Even if Policy 315 was strictly enforced at a later date, any failure to do so, as alleged here by Fouce, could constitute disparate treatment.  In fact, Fouce does not allege ongoing disparate treatment, but rather, disparity for a finite period of time and with regard to a handful of incidents.

In determining whether two employees are similarly situated, the Court must look at all relevant factors, the number of which depends on the context of the case. *See Spath v. Hayes Wheels Int'l-In., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). In the case of employee discipline, a plaintiff must show that she and the allegedly comparable employees are similarly situated with respect to performance, qualifications, and conduct. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000); *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004) ("In order for an employee to be considered similarly situated, an employee must be directly comparable in all material respects."). This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Id.*

The Court has sufficiently addressed the issue of whether the employees' conduct was sufficiently similar. The parties do not dispute whether Fouce, Reidy, and Whitener were equally subject to Lowe's' Policies, in particular, Policy 315. Furthermore, Lowe's does not deny that Fouce's allegations with regard to Reidy and Whitener, if true, constitute Class "A" violations under the Policy.[10] Lowe's has not presented any evidence that Reidy and Whitener reported to different supervisors than Fouce, and even if it had, all employees were subject to Policy 315. For the purposes of the instant summary judgment motion, the Court concludes that Fouce has identified two similarly-situated employees.

---

[10]     In her deposition, Fouce suggested that three other Lowe's employees – Kevin Yocum, Paul Jordan, and Peggy Rodabaugh – might also be directly comparable. Lowe's addressed these allegations in its Memorandum in Support that each of these individuals were not similarly-situated. Fouce failed to mention or refute these arguments. Accordingly, the Court does not consider those employees as similarly-situated.

### 3. **Pretext**

As Fouce has established her *prima facie* case, the burden shifts to Lowe's to come forward with evidence of a legitimate and non-discriminatory reason for the employment decision. Lowe's articulated a legitimate business justification for Fouce's termination; three violations of Policy 315. The inference of discrimination therefore dissolves and Fouce must prove, by a preponderance of the evidence, that Lowe's proffered reason is false and constitutes only pretexts for discrimination. *See Crim v. Bd. of Ed. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir. 1998). Thus, the burden shifts back to Fouce to show pretext.

Pretext means more than a mistake on the part of the employer; it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). In other words, the plaintiff bears the burden of showing that the employer's reason for the adverse employment action was a lie or had no basis in fact. *See Crim*, 147 F.3d at 541. Fouce must present evidence showing that Lowe's' proffered reason was: (1) factually baseless; (2) not the actual motivation for the discharge; or (3) was insufficient to motivate the discharge. *See Nawrot v. CPC, Int'l.*, 277 F.3d 896, 906 (7th Cir. 2002) (citation omitted). These formulations are simply different ways of recognizing that when the sincerity of an employer's asserted reasons for discharging an employee are cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation. *See Testerman v. EDS Tech. Prod. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996) (citation omitted). "If the employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses." *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995). In such circumstances, the

employee creates "a factual issue as to whether the employer's explanation is credible or merely a pretext for discrimination." *Dey v. Cold Const. & Devel. Co*, 28 F.3d 1446, 1461 (7th Cir. 1994).

Fouce has met her burden.  When "similarly situated employees belonging to a different racial group received more favorable treatment. . . [that evidence] can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination."  *Gordon v. United Airlines, Inc*., 246 F.3d 878, 892 (7th Cir. 2001) (quoting *Graham v. Long Island R.R*., 230 F.3d 34, 43 (2nd Cir. 2000)).

Even if Lowe's had a legitimate reason for being frustrated with Fouce, Fouce established an issue of fact regarding pretext by providing evidence from which a jury could find that Lowe's treated two similarly-situated Caucasian employees more favorably.   Lowe's proffered nondiscriminatory justification for Fouce's termination is that it was following Policy 315.  But, as discussed at length above, Fouce satisfied her burden by presenting sufficient evidence of Lowe's' comparable treatment of her and two Caucasian employees.  This inconsistency creates a genuine issue of fact as to whether Lowe's' stated reason for discharging Fouce was a pretext for discrimination.  The Court concludes that Fouce has created "a factual issue as to whether the employer's explanation is credible or merely a pretext for discrimination." *Dey v. Colt Const. & Dev. Co*., 28 F.3d 1446, 1461 (7th Cir. 1994).  Because Fouce provided the Court with specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses, see *Collier v. Budd Co*., 66 F.3d 886, 893 (7th Cir. 1995), and a grant of summary judgment in favor of Lowe's is therefore inappropriate on Fouce's Title VII claim.

## B. HOSTILE WORK ENVIRONMENT

Fouce also contends that Lowe's employees created a hostile work environment during her seven years of employment.  To state a claim for a hostile work environment, a plaintiff must demonstrate that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere;[11] and (4) there is a basis for employer liability.  *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).  Assuming Fouce could establish these elements, the question of whether Lowe's took prompt and effective remedial action would determine whether it could be liable for the alleged hostile environment. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 977 (7th Cir. 2004).  Lowe's could be held liable for Fouce's co-workers' allegedly harassing conduct only if it "knew or should have known" about the harassment she experienced and failed to take reasonable steps to remedy the situation.  *Id.* at 976.

To qualify as hostile, a work environment must be objectively and subjectively offensive. That is, it must be a work environment that a reasonable person would find hostile or abusive, and one that the plaintiff in fact perceived to be hostile or abusive.  *See Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005).  Teasing, offhand remarks, and isolated, non-egregious incidents are not considered sufficiently severe to satisfy Title VII's definition of a hostile environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

---

[11]     The Seventh Circuit has recognized that pervasiveness and severity "are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute," *Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1047 (2002) (internal citation omitted).  *See also Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004) (rejecting the "erroneous premise that the harassing words or conduct had to be both severe *and* pervasive" and emphasizing that "one or the other will do.") (internal quotation marks omitted).

To evaluate whether a work environment is objectively hostile, the Court considers all of the circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Essentially, Fouce must paint a picture of a "hellish" workplace. *See Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001).

Fouce points to the following to support her hostile work environment claim, all of which occurred at some point during her seven years of employment with Lowe's:[12]  1) being requested to fill in as a cashier more frequently than other non-African-American employees; 2) being disciplined and ultimately terminated for violation of Lowe's' Policies while other non-African-American employees were not so disciplined; 3) the presence of racially-derogatory graffiti stating "[n]igger go home" or [n]igger go back where you came from" written on the public / employee's bathroom walls on three occasions; 4) several racially-offensive comments made to Fouce by various co-

---

[12]     Lowe's' request that the Court not consider those incidents that are beyond the 300-day statute of limitations is **DENIED**. Title VII requires that an employee file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e).  In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court interpreted the statute of limitations filing requirement in Title VII.  536 U.S. 101(2002).  The Court held that a hostile work environment claim under Title VII includes events that occurred outside the 180- or 300-day limitations period, as long at least one act occurred within the applicable filing period. *Id*. at 118.  Further, the Court noted that a hostile work environment results from the cumulative effect of individual acts. *Id*. at 117. Therefore, an "employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id*. at 118.  Several of the incidents complained of occurred within the 300 days of the date she filed a charge with the EEOC; therefore, all alleged events will be considered by the Court.

workers; 5) she heard another employee use the word "nigger; and 6) when she complained to management about her concerns, their response was "tepid."[13]   *See* Pl.'s Resp. Br. 19.

Fouce's allegation that she was asked to fill in as a cashier more often than other white employees does not support her hostile work environment claim because she has not shown that the "conduct was directed at her because of her race."  *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1034 (7th  Cir.2004) (stating that to establish a hostile work environment claim, a plaintiff must show, *inter alia*, that the conduct was directed at her because of her race).  Furthermore, Fouce admits that filling in as a cashier was specifically within her job description as the pricing and signage coordinator.  Fouce Dep. at 131.  She also admits that a Caucasian employee, Brenda Payton, was the only other employee with a similar job description to hers, and she also filled in as a cashier.  *Id.* at 133.

Next, Fouce's allegation that she was singled out for discipline does not support her hostile work environment claim because she again fails to show how the conduct was directed at her because of her race.  She presents no record evidence to show that her discipline was racially motivated.  In fact, she admits on page 20 of her response brief that "[d]isciplining Plaintiff and paging Plaintiff to cover breaks is not explicitly racial even if it is otherwise unfair."  She follows that concession with only bare conclusions that white employees were not similarly disciplined or paged to cover breaks.  This is insufficient for the purposes of a summary judgment motion.  Fouce cannot defeat summary judgment merely by pointing to self-serving allegations without evidentiary support.  *See Cliff*, 42 F.3d at 408.  Moreover, Fouce does not refute that each of the disciplinary

---

[13]      Fouce also complains of being referred to as "hey you."  Fouce Dep. at 205.  However, the conduct at issue must have a racial character or purpose to support a hostile work environment claim.  *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999).

warnings she received was occasioned not by her race, but by her own improper conduct.[14]  *See* Fouce Br. Resp. at 19.

Therefore, the Court is left only with Fouce's allegations of racially derogatory comments and racially derogatory graffiti.  Fouce actually concedes that "[t]he graffiti and the racial comments certainly added to the totality of the circumstances[,] but . . . probably does [sic] not by themselves create a hostile environment."  Pl.'s Resp. Br. at 21.  She further stated that "[i]n and of themselves[,] one could reasonably argue, as [Lowe's] has, that they [the comments and graffiti] are not severe and pervasive."  Pl.'s Resp. Br. at 21.  The Court agrees.

Fouce's allegations amount to but a handful of discrete instances over the course of more than seven years of employment.  First, Fouce's alleges that she overheard a co-worker use the word "nigger" on one occasion. "Second hand" conduct is not sufficiently severe or pervasive enough to create a hostile work environment.  *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1047, n. 9 (7th Cir. 2000). *See also Smith v. Northeastern Ill. Univ.*, 388 F.3d 559 (7th Cir. 2004) (affirming summary judgment for employer on hostile work environment claim because there is no

---

14      Fouce discusses only one disciplinary measure in detail: a written warning she received on July 1, 2002, for refusing to work two overnight shifts.  She argues that two Caucasian employees who also refused to work the overnight shifts were not similarly disciplined.

The parties vigorously dispute the facts surrounding this incident.  However, the record reflects that this written warning was in no way related to her termination in 2003, rendering this incident irrelevant for the purposes of this suit.

Even if the Court found this matter to be relevant, Fouce failed to present evidence that the alleged harassment in any way altered the conditions of her employment.  *Cf. Longstreet v. Ill Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (finding that negative evaluations, written warnings, and placement on "proof status" are putatively disciplinary measures, but without tangible job consequences, they are not adverse employment actions actionable under Title VII).

hostile work environment where the harassment about which the plaintiff complains was not directed at her). Furthermore, "[t]he mere utterance of a racial epithet that engenders offensive feelings does not sufficiently affect the conditions of employment to create a hostile work environment." *McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996).

Next, Fouce alleges that she viewed three items of racial graffiti in the women's bathroom nearly two years before she was terminated. However, she conceded that the bathroom was public accessible, Fouce Dep. at 242-43, so it is virtually impossible to know whether the graffiti was the work of a Lowe's employee, or whether the content was in any way directed at her.[15] Additionally, Fouce cannot demonstrate that there is a basis for employer liability. She admits that the graffiti was immediately painted over when she complained, and never reoccurred. To be liable, it must be shown that Lowe's knew or should have known about the conduct and failed to take reasonable steps to remedy the harassment. *See Wyninger*, 361 F.3d at 976. The Seventh Circuit has clarified that an employer discharges its legal duty when it takes reasonable steps to discover and rectify harassment. Fouce complained to an Assistant Manager, Mindy Snyder, who stated that Lowe's would not tolerate the graffiti, and advised that if they found out who was responsible, the issue would be promptly addressed. Fouce Dep. at 242-43.

Finally, Fouce alleges that several racially-tinged comments from co-workers were directed at her. Specifically, Fouce claims that a co-worker called her "Aunt Jemima" on three occasions and once also said, "I thought you people like red beans and rice and catfish." Fouce Dep. at 211-13. Neither comment is physically threatening or humiliating, nor severe or pervasive. These comments are perhaps insensitive and offensive, but Title VII is not a code of general civility; offhand

---

[15]

comments and isolated incidents that are not extremely serious do not amount to actionable harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Not every unpleasant workplace is a hostile environment . . . The workplace that is actionable is the one that is hellish." *Wyninger*, 361 F.3d at 977 (internal citations omitted). Moreover, she acknowledged that the racially tinged remarks stopped immediately after she brought them to management's attention, *id*. at 214, 217, 219, which again illustrates her failure to demonstrate a basis for employer liability. *See Wyninger*, 361 F.3d at 976.

Fouce's hostile work environment claim fails because of the omissions addressed above and, simply put, she failed to present evidence that she was subjected to a "hellish" work environment. The behavior complained of was not "so severe or pervasive so as to alter the conditions of employment and create an abusive working environment," *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998), and Fouce failed to show that being called names affected her work performance in any way, thereby altering the conditions of her employment. Additionally, Fouce fails to establish a basis for employer liability, as every single time she brought a complaint of race-based conduct to the attention of Lowe's management, the matter was resolved to her satisfaction. Fouce Dep. at 212, 214, 217, 219.

No rational jury could find that the behavior of Lowe's employees was so hostile to Fouce that she was unable to function in her position as a pricing and signage coordinator. Title VII "do[es] not mandate admirable behavior from employers," *Russell v. Bd. of Trs. of Univ. of Ill.*, 243 F.3d 336, 343 (7th Cir. 2001). *See also Russell*, 243 F.3d at 343-44 (citing a number of Seventh Circuit cases which held that various statements "were not so offensive as to constitute actionable conduct").

Accordingly, summary judgment shall be entered for Lowe's with regard to Fouce's hostile work environment claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's, Lowe's Home Centers, Inc.,[16] Motion for Summary Judgment.  Plaintiff's, Lisa Fouce, hostile work environment claim is hereby dismissed, and her race discrimination claim survives, as limited in scope by this Order.

IT IS SO ORDERED this 22nd day of December, 2005.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed to:

Tanya L. Castrogiovanni
LITTLER MENDELSON
tcastrogiovanni@littler.com

Shanthi Gaur
LITTLER MENDELSON
sgaur@littler.com

Keith C. Hult
LITTLER MENDELSON
khult@littler.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

Mary C. O'Neil
LITTLER MENDELSON
moneil@littler.com

Gregory A. Stowers
STOWERS WEDDLE & HENN PC
gstowers@swh-law.com

---

[16]   Improperly named as Lowe's Home Improvement Center, Inc.